## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CAROLE VAN TASSELL; ERIC DUNN;  )
BYRON SIGCHO; AND JANET  )
CASINOVER; individually and  )
on behalf of all others similarly situated,  )
                                        )      Case No.: _____
                          Plaintiffs,  )
      v.                                 )      Judge _____
                                          )
UNITED MARKETING GROUP, LLC, an  )      Magistrate Judge _____
Illinois limited liability company;  )
PERMISSION INTERACTIVE, INC., a  )
California corporation; PIKES PEAK  )
DIRECT MARKETING, INC., a Colorado  )
corporation, and TAYLOR GIFTS, INC., a  )
Pennsylvania corporation,  )
                                          )
                                          )
                        Defendants.  )

## NOTICE OF REMOVAL OF PIKES PEAK DIRECT MARKETING INC.

Defendant Pikes Peak Direct Marketing Inc., ("Pikes Peak") by its counsel, hereby gives

notice of removal of this action, pursuant to 28 U.S.C. §§ 1332, 1441, 1446 and 1453, from the

Circuit Court of Cook County, Illinois, Chancery Division to the United States District Court for

the Northern District of Illinois.

### I.      FACTUAL BACKGROUND

1.      On or around March 26, 2010, Plaintiffs Carole Van Tassell, Eric Dunn, Byron

Sigcho and Janet Casinover (collectively, "Plaintiffs") commenced a state-court action against

United Marketing Group, LLC ("UMG"), Permission Interactive, Inc. ("Permission Interactive"),

Pikes Peak and Taylor Gifts, Inc. ("Taylor Gifts" and, collectively "Defendants") in the Circuit

Court of Cook County, Illinois styled Carole Van Tassell, Eric Dunn, Byron Sigcho and Janet

Casinover, et al. v. United Marketing Group, LLC, Permission Interactive, Inc., Pikes Peak

Direct Marketing, Inc. and Taylor Gifts, Inc., Case No. 10CH12791 ("State Court Action"), Ex.
1 hereto.

2. Plaintiffs served Pikes Peak on April 2, 2010. See Declaration of James F.
Gaston ("Gaston Decl."), Ex. 2 hereto at ¶ 3 and Ex. B thereto (transmittal e-mail from registered
agent, CSC Corporation).

3. The State Court Action asserts violations of, inter alia, the Illinois Consumer
Fraud Act, the Illinois Automatic Contract Renewal Act, breach of contract, unjust enrichment,
fraud in the inducement, and conspiracy to commit fraud in the inducement and alleges that
Defendants "acted in concert as business partners and through a common enterprise to churn
charges for subscription Membership Programs." See Compl., Ex. 1 hereto, at ¶ 122. The
putative class includes "[a]ll individuals who were charged a membership fee" by UMG. Id. at
¶ 54. The putative class also includes three proposed subclasses: (1) individuals who were
charged a membership fee by UMG as a result of making an online purchase at any website
owned and operated by Taylor Gifts; (2) individuals who were charged a membership fee by
UMG as a result of making an online purchase at any website owned and operated by Permission
Interactive; and (3) individuals who were charged a membership fee by UMG as a result of
making an online purchase at any website owned and operated by Pikes Peak. Id.

4. Plaintiffs allege that UMG "purports to sell negative-option membership
programs billed as recurring monthly charges, typically in the range of $10 to $20 per month."
Id. at ¶ 17. Plaintiffs, however, contend that "[i]n thousands of instances, consumers are entirely
unaware that they have been deceptively or fraudulently enrolled in a UMG Membership
Program" and, consequently, purportedly are repeatedly billed by UMG but "get nothing in
return." See, e.g., id. ¶¶ 18, 21 (alleging that consumers often do not discover the charges "until

2

several months or more have elapsed"). Plaintiffs further allege that Defendants are aware of the purportedly "deceptive nature" of the business model, but that all Defendants allegedly "misused confidential bank card information so as to generate additional revenue." Id. ¶¶ 22, 23, 121-127 (alleging Defendants conspired to commit fraud in the inducement vis-à-vis, inter alia, the allegations described above).

5.    In addition to seeking recovery for "actual damages," Plaintiffs also seek an award of punitive damages on behalf of the class, statutory damages, civil penalties, injunctive relief, restitution, pre- and post-judgment interest, attorneys' fees, litigation expenses and costs. See Request For Relief at c, d, e, f, g, and h.

6.    Plaintiffs allege that "Defendants have deceived thousands of consumers who fall into the definitions of the Classes." Compl. ¶ 56. In fact, the number of putative class members who fall within Plaintiffs' class and subclass definitions exceeds 200,000. See Declaration of Alan Portelli ("Portelli Decl."), Ex. 3 hereto, at ¶ 4.

## II.    GROUNDS FOR REMOVAL

7.    Plaintiffs' claims are removable because the Class Action Fairness Act ("CAFA") provides this Court with jurisdiction. See 28 U.S.C. §§ 1332(d), 1453. CAFA extends federal jurisdiction over class actions where: (1) any member of the proposed class is a citizen of a state different from any defendant (i.e., minimal diversity exists); (2) the proposed class consists of more than 100 members; and (3) the amount in controversy is $5 million or more, aggregating all claims and exclusive of interest and costs. See 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B).[1] As shown in further detail below, each of these requirements is met here. See disc. infra at 3-5.

―――――――――――

[1]    A "class action" includes any civil action filed under Federal Rule of Civil Procedure 23, or "similar State statute or rule of judicial procedure," such as 735 ILCS 5/2-801. See 28 U.S.C. § 1332(d)(1)(B); Compl., Ex. 1 hereto, at ¶ 54.

3

## A. Minimal Diversity

8. Plaintiffs' proposed class is comprised of "[a]ll individuals who were charged a membership fee" by UMG. Compl. at ¶ 54. The putative class also includes three proposed subclasses: (1) individuals who were charged a membership fee by UMG as a result of making an online purchase at any website owned and operated by Taylor Gifts; (2) individuals who were charged a membership fee by UMG as a result of making an online purchase at any website owned and operated by Permission Interactive; and (3) individuals who were charged a membership fee by UMG as a result of making an online purchase at any website owned and operated by Pikes Peak. Id. Thus, putative class members reside throughout the United States. Gaston Decl., Ex. 2 hereto, at ¶ 4.

9. Named Plaintiff Carole Van Tassell is a resident of New York. Compl. at ¶ 6. Named Plaintiff Eric Dunn is a resident of Virginia. Id. at ¶ 7. Plaintiff Byron Sigcho is a resident of Illinois. Id. at ¶ 8. Plaintiff Janet Casinover is a resident of New York. Id. at ¶ 9. Pikes Peak is, in turn, a Delaware corporation with its principal place of business in Colorado. See Gaston Decl., Ex. 2 hereto, at ¶ 2; see also 28 U.S.C. § 1332(c)(1). Minimal diversity is thus established under CAFA. See 28 U.S.C. § 1332(d)(2)(A).

## B. Number Of Class Members

10. Plaintiffs purport to bring this action on behalf of "thousands of consumers who fall into the definitions of the Classes." Compl. ¶ 56. And, indeed, the number of class members who fall within Plaintiffs' putative class and subclass definitions exceeds 200,000. See Portelli Decl., Ex. 3 hereto, at ¶ 4.

11. Accordingly, the Court can properly infer that the putative class consists of more than 100 members, satisfying the requirement in CAFA that the putative class consist of more than 100 members. See id.; 28 U.S.C. § 1332(d)(5)(B).

4

## C. Amount In Controversy

12. The amount in controversy also readily exceeds $5 million. 28 U.S.C. § 1332(d)(2)(A). Plaintiffs allege that there are "thousands" of putative class members who were enrolled in UMG's membership programs. Compl. at ¶ 18. Plaintiffs further allege that UMG wrongfully charged putative class members "$10 to $20 per month" for "several months or more" in connection with the membership programs. Id. at ¶¶ 17, 18 and 21. Plaintiffs further allege that all Defendants allegedly "misused confidential bank card information so as to generate additional revenue" by allegedly conspiring to enroll Plaintiffs and putative class members in membership programs offered by UMG. Id. ¶¶ 22, 23, 110 (alleging Pikes Peak, Permission Interactive and Taylor Gifts "took concrete and intentional steps to conceal from" putative class members that their confidential credit card information was being transferred to UMG "for the express purpose of allowing UMG to place unauthorized charges on their accounts in a reoccurring manner").

13. As a result of this alleged wrongful conduct, Plaintiffs contend that they are entitled to restitution and "actual damages." See, e.g., id. at Request For Relief at c and e. In addition, Plaintiffs also seek an award of punitive damages on behalf of the class, statutory damages, civil penalties, injunctive relief, attorneys' fees, litigation expenses and costs. See id. at Request For Relief at d, f, g and h.

14. As noted, the number of putative class members exceeds 200,000. Portelli Decl., Ex. 3 hereto, at ¶ 4. Given Plaintiffs' allegations, it can reasonably be inferred that each of these individuals suffered damages of at least $40. Compl. at ¶ 17. Thus, the amount in controversy far exceeds $5 million. Id.

15. Indeed, Plaintiffs purport to seek recovery on behalf of "[a]ll individuals who were charged a membership fee" by UMG. See Compl., Ex. 1 hereto, at ¶ 54. The total

5

membership fees (net of refunds) that UMG has generated as a result of its marketing agreements with Taylor Gifts, Permission Interactive and Pikes Peak exceeds $10 million. Portelli Decl., Ex. 3 hereto, at ¶ 3. Accordingly, the jurisdictional minimum is met without including Plaintiffs' claims for punitive damages, attorneys' fees and costs. Spivey v. Vertrue, Inc., 528 F.3d 982, 985 (7th Cir. 2008) (removing party's burden is to demonstrate "what the plaintiff is claming ... not whether plaintiff is likely to win or be awarded everything he seeks.").

16. Accordingly, while Pikes Peak in no way concedes that Plaintiffs or members of the proposed class are entitled to the damages Plaintiffs seek in this action, the minimum recovery alleged by Plaintiffs readily exceeds the requirement of $5 million in controversy. See 28 U.S.C. § 1332(d)(2); Spivey, 528 F.3d at 985.

17. Plaintiffs bear the burden of showing that an exception to CAFA applies. See, e.g, Hart v. Fedex Ground Package Sys., Inc., 457 F.3d 675, 680 (7th Cir. 2006). No exception, however, applies. See id.

## III. COMPLIANCE WITH REMOVAL STATUTE

18. The Notice of Removal was properly filed in the United States District Court for the Northern District of Illinois, because the Circuit Court of Cook County, Illinois is located in this federal judicial district. See 28 U.S.C. § 1441(a).

19. The Notice of Removal is signed pursuant to Rule 11 of the Federal Rules of Civil Procedure. See 28 U.S.C. § 1446(a).

20. As noted, Pikes Peak was served by CSC Corporation on April 2, 2010. See Gaston Decl., Ex. 2 hereto at ¶ 3. Accordingly, this Notice of Removal is timely under 28 U.S.C. § 1446(b), as it is filed within 30 days of service.

21. Consent to federal jurisdiction is not necessary given the basis for jurisdiction is CAFA. See 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the

United States in accordance with section 1446 ... except that such action may be removed by any defendant without the consent of all defendants.").

22. Pursuant to 28 U.S.C. § 1446(a), a copy of all process, pleadings, and orders served upon Pikes Peak with respect to this action, which papers include the Complaint, are attached. See Ex. 1 hereto.

23. Pursuant to 28 U.S.C. § 1445(d), a copy of this Notice of Removal is being served upon counsel for Plaintiffs and a copy, along with a Notice of Filing of the Notice of Removal, is being filed instanter with the Clerk of the Circuit Court of Cook County, Illinois.

## IV. CONCLUSION

For the foregoing reasons, Pikes Peak Direct Marketing Inc. respectfully requests that this Court exercise jurisdiction over this action and enter orders and grant relief as may be necessary to secure removal and to prevent further proceedings in this matter in the Circuit Court of Cook County, Illinois. Pikes Peak further requests whatever other relief the Court deems appropriate.

Dated: April 30, 2010

Respectfully submitted,

/s/ Livia M. Kiser

One of the Attorneys for Defendant
Pikes Peak Direct Marketing Inc.

7

Mark S. Mester
Mary Rose Alexander
Livia M. Kiser
LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago, Illinois 60606
Phone: (312) 876-7700
Facsimile: (312) 993-9767
E-mail: mary.rose.alexander@lw.com
E-mail: livia.kiser@lw.com

# Exhibit 1

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
### COUNTY DEPARTMENT, CHANCERY DIVISION

100H 1279 11.

| | |
|---|---|
| CAROLE VAN TASSELL; ERIC DUNN; ) <br> BYRON SIGCHO; and JANET ) <br> CASINOVER; individually and on behalf of ) <br> all others similarly situated, ) <br> ) <br> ) <br> Plaintiffs, ) <br> v. ) <br> ) <br> UNITED MARKETING GROUP, LLC, an ) <br> Illinois limited liability company; ) <br> PERMISSION INTERACTIVE, INC., a ) <br> California corporation; PIKE'S PEAK ) <br> DIRECT MARKETING, INC., a Colorado ) <br> corporation; and TAYLOR GIFTS, INC., a ) <br> Pennsylvania corporation, ) <br> ) <br> Defendants. ) <br> ) | Case No. <br><br> **CLASS ACTION COMPLAINT** <br> **AND JURY DEMAND** |

Plaintiffs Carole Van Tassell, Eric Dunn, Byron Sigcho, and Janet Casinover

allege as follows upon personal knowledge as to themselves and their own acts and

experiences and, as to all other matters, upon information and belief, including

investigation conducted by their attorneys.

### Nature of the Case

1. Each of the Plaintiffs in this case made the common decision to make an

online purchase, and in doing so, provided his or her credit or debit card information to

the merchant. Little did Plaintiffs know that after submitting this highly sensitive

information, the merchant transmitted their names and confidential bankcard information

to Defendant United Marketing Group. Without Plaintiffs' authorization, United

1

Marketing Group then placed small but recurring monthly charges for unrelated services, that Plaintiffs never ordered, on Plaintiffs' bankcards.

2. Working in deliberate cooperation with each other, Defendants, without authorization, systematically placed charges on the credit or debit card accounts of thousands of people nationwide. All Defendants have profited from these unauthorized charges and have taken steps to actively continue the practice.

3. Ordinary people who go online to make a purchase are unaware that, when they submit their credit or debit card information to Defendants Pike's Peak Direct Marketing, Taylor Gifts, or Permission Interactive to purchase a product, those entities subsequently transmit that confidential information to United Marketing Group for the purpose of enrolling consumers in entirely unrelated on-going services that United Marketing Group supposedly provides — services for which United Marketing Group places a reoccurring monthly charge on the consumer's bank card.

4. Because United Marketing Group remits revenue to the referring retail merchant who transmitted a consumer's confidential billing information — including the other Defendants herein — all Defendants have a vested interest in continuing the business relationship with a maximum disregard for consumer authorization or any post-transaction complaints.

5. Defendants' conduct has significantly injured consumers in a uniform and harmful manner, and they now seek to recover the money taken from them and stop Defendants' ongoing wrongful conduct.

## Parties

### Plaintiffs

6. Plaintiff Carole Van Tassell is a resident of New York.

7. Plaintiff Eric Dunn is a resident of Virginia.

8. Plaintiff Byron Sigcho is a resident of Illinois.

9. Plaintiff Janet Casinover is a resident of New York.

### Defendants

10. Defendant United Marketing Group, LLC has its company headquarters at 929 North Plum Grove Road, Schaumburg, Illinois 60173.

11. Defendant Permission Interactive, Inc. has its corporate headquarters at 6070 Mission Gorge Road, Suite 1, San Diego, California 92120.

12. Defendant Pike's Peak Direct Marketing, Inc. has its corporate headquarters at 5070 Centennial Blvd, Colorado Springs, Colorado 80919.

13. Defendant Taylor Gifts, Inc. has its corporate headquarters at 600 Cedar Hollow Road, Paoli, Pennsylvania 19301.

### Jurisdiction and Venue

14. The Court has personal jurisdiction over Defendant United Marketing Group because it is headquartered in this state, and the Court has personal jurisdiction over all other Defendants pursuant to 735 ILCS § 5/2-209(a)(1) because all Defendants transact significant business in this state both with consumers and United Marketing Group.

15. Venue is proper in Cook County because Defendant United Marketing Group, LLC is located in this county and all Defendants transact business here.

3

## Facts Common To All Counts

16.     Plaintiffs bring this case individually and on behalf of a class of consumers who were charged a fee by United Marketing Group, LLC ("UMG"), including but not limited to fees for services titled Buyer's Edge, MyAdvisor, Simply Mine, TechXperts for Consumer, Perfect Home, etc.

17.     UMG's business model purports to operate by placing incentive-based ads on the websites of its online retail merchant partners, such as Permission Interactive, Pike's Peak Direct Marketing, and Taylor Gifts (collectively referred to as the "Merchant Partners"). UMG purports to sell negative-option membership programs billed as reoccurring monthly charges, typically in the range of $10 to $20 per month. Buyer's Edge, MyAdvisor, and Simply Mine are examples of these subscription-based membership programs. These programs are collectively referred to as the "Membership Programs" throughout this Complaint.

18.     UMG's Membership Programs purport to provide various discounts and benefits applicable to a variety of companies with which UMG contracts. In thousands of instances, consumers are entirely unaware they have been deceptively or fraudulently enrolled in a UMG Membership Program and, as a result, consumers — though repeatedly billed by UMG — get nothing in return.

19.     UMG and its Merchant Partners enrolled Plaintiffs in Membership Programs following an online purchase by Plaintiffs at one of the Merchant Partners' websites. Following those purchases, the Merchant Partners transmitted Plaintiffs' credit/debit card information to UMG, which then enrolled them in a "trial" Membership Program for $1.00. Following an approximately thirty-day waiting period, during which

4

Plaintiffs were unaware they were enrolled in the Membership Program, UMG charged each Plaintiff at least $10, and the same amount or more each month thereafter until consumers discovered the unauthorized charges.[1]

20.     In most instances, the Membership Program is wholly unrelated to the retail transaction completed by the consumer. Yet, for each consumer enrolled in a UMG program, the Merchant Partner who transferred the individual's bank card information receives a share of the charge and thereby profits from each unauthorized charge.

21.     Because consumers are unaware that they are being enrolled in a UMG Membership Program and because the amount charged by UMG is relatively small (*i.e.*, between $10 and $20 per month), consumers often do not discover these charges on their bank card statements until several months or more have elapsed.

22.     UMG and its Merchant Partners are aware of the deceptive nature of this business model. Defendants receive large numbers of complaints about these charges from consumers that dispute any authorization for these charges. The Merchant Partners disavow any knowledge of or responsibility for this practice even as each Merchant Partner facilitates the deception by transferring their customers' names and bank card information to UMG for the purpose of billing consumers.

23.     With ready access to consumers' confidential billing information, UMG and its Merchant Partners misused confidential bank card account information so as to generate additional revenue for themselves by cramming unauthorized charges on consumers' bank card accounts.

---

[1]     In many instances, UMG enrolled consumers, including Plaintiffs Casinover and Sigcho, in multiple Membership Programs at once, each carrying a separate $14.95 monthly charge.

5

## Facts Specific to Plaintiff Carole Van Tassell

24. In or around November 2009, Ms. Carol Van Tassell purchased a product from a website owned by Defendant Pike's Peak Direct Marketing (ChefsCatalog.com).

25. Shortly thereafter, Ms. Van Tassell was billed $14.95 for "UMG·MINE" (approximate actual size). Several months passed before Ms. Van Tassel discovered these charges.

26. Ms. Van Tassell did not know the origin of these charges.

27. Ms. Van Tassell called UMG in order to determine why UMG billed her. A UMG customer representative informed her that she enrolled in the UMG "Simply Mine" membership program following her purchase from Defendant Pike's Peak Direct Marketing.

28. Ms. Van Tassell disputed this statement and insisted that she had not authorized either Defendant to bill her any amount or for such service.

29. UMG agreed to cancel the ongoing Membership Program but would not fully refund Ms. Van Tassell for all the charges it crammed on her credit card account.

30. Ms. Van Tassell never requested or authorized Pike's Peak Direct Marketing to transfer her confidential credit card information to UMG and never requested or authorized UMG to repeatedly charge her credit card.

## Facts Specific to Plaintiff Eric Dunn

31. In or around March 2009, Mr. Eric Dunn made a purchase from a website owned and operated by Defendant Taylor Gifts (www.ShopGetOrganized.com).

6

32. Shortly thereafter, Mr. Dunn was billed $11.99 for "UMG·EDGE" (approximate actual size). Mr. Dunn did not find this charge on his bill for several months.

33. Mr. Dunn did not know the origin of these charges.

34. Mr. Dunn contacted UMG in order to determine why UMG billed him. A UMG customer representative informed him that he was enrolled in the UMG Buyer's Edge membership program following his purchase from Defendant Taylor Gifts.

35. Mr. Dunn disputed this statement and insisted that he had not authorized either Defendant to bill him any amount or for such service.

36. UMG agreed to cancel the ongoing Membership Program, but would not fully refund Mr. Dunn for all the charges it crammed on his credit card account.

37. Mr. Dunn never requested or authorized Taylor Gifts to transfer his confidential credit card information to UMG and never requested or authorized UMG to repeatedly charge his credit card.

## Facts Specific to Plaintiff Byron Sigcho

38. In August 2009, Mr. Byron Sigcho purchased a product known as a "Slap Chop" through Defendant Permission Interactive's website.

39. Shortly thereafter, Mr. Sigcho was billed the sum of $14.95 for "UMG·EDGE" and $14.95 for "UMG·MYAD" (approximate actual size).

40. Mr. Sigcho did not know the origin of these charges.

41. Mr. Sigcho contacted UMG in order to determine why he was billed by them. A UMG customer representative was unable or unwilling to tell Mr. Sigcho how he became enrolled in its Membership Programs.

7

42. UMG informed him that it had no records of how it acquired Mr. Sigcho's credit card information and no records demonstrating that Mr. Sigcho authorized UMG to charge his credit card for any product.

43. UMG agreed to cancel the ongoing Membership Programs, but has not fully refunded Mr. Sigcho for all the charges applied to his credit card at the time of filing this Complaint.

44. On information and belief, UMG enrolled Mr. Sigcho in its Membership Programs following his purchase from Permission Interactive, which transferred his confidential credit card information to UMG without his authorization.

45. Mr. Sigcho never requested or authorized Permission Interactive to transfer his confidential credit card information to UMG and never requested or authorized UMG to repeatedly charge his credit card.

## Facts Specific to Plaintiff Janet Casinover

46. In August 2009, Ms. Janet Casinover purchased a "Potty Patch" for her dog at a website hosted by Permission Interactive, Inc. Ms. Casinover gave Permission Interactive her debit card number for the purchase.

47. Shortly thereafter, Ms. Casinover was billed the sum of $14.95 for "UMG·EDGE" and $14.95 for "UMG·MYAD" (approximate actual size). Ms. Casinover did not find these charges on her bill until February 2010.

48. Ms. Casinover did not know the origin of these charges.

49. Ms. Casinover called UMG many times but was always placed on hold. Ms. Casinover was never able to speak with a representative of UMG about these unknown charges.

8

50. In order to stop these recurring UMG charges, Ms. Casinover had to cancel her debit card with her bank and was issued a new card with a different number.

51. Ms. Casinover does not know what or who UMG*EDGE or UMG*MYAD are and, further, Ms. Casinover did not authorize Permission Interactive to transmit her debit card information to UMG or authorize UMG to bill her.

52. On information and belief, UMG enrolled Ms. Casinover in its Membership Programs following her purchase from Permission Interactive, which transferred her confidential credit card information to UMG without her authorization.

53. Ms. Casinover never requested or authorized Permission Interactive to transfer her confidential credit card information to UMG and never requested or authorized UMG to repeatedly charge his credit card.

## Class Allegations

54. Plaintiffs bring this action pursuant to Illinois 735 ILCS § 5/2-801 on behalf of themselves and a Class and three SubClasses:

### Class Definition

All individuals who were charged a membership fee by United Marketing Group, LLC.

#### Permission Interactive SubClass Definition

All individuals who were charged a membership fee by United Marketing Group, LLC as a result of making an online purchase at any website owned and operated by Permission Interactive, LLC.

#### Pike's Peak Direct Marketing SubClass Definition

All individuals who were charged a membership fee by United Marketing Group, LLC as a result of making an online purchase at any website owned and operated by Pike's Peak Direct Marketing, Inc.

9

### *Taylor Gifts SubClass Definition*

All individuals who were charged a membership fee by United Marketing Group, LLC as a result of making an online purchase at any website owned and operated by Taylor Gifts, Inc.

The following persons are excluded from the Class and Subclasses: (1) any Judge or Magistrate presiding over this action and immediate members of his or her family; (2) Defendants and their directors, officers, and employees; and (3) persons who properly execute and file a timely request for exclusion from the class and (4) the legal representatives, successors, or assigns of any such excluded persons.

55. The above-described Class and SubClasses are called the "Classes" for purposes of this Complaint.

56. **Numerosity**: The exact number of the members of the Classes is unknown and not available to Plaintiffs, but the number of members and their geographic dispersion makes individual joinder is impracticable. On information and belief, Defendants have deceived thousands of consumers who fall into the definitions of the Classes. Members of the Class and SubClasses can be identified through Defendants' records.

57. **Typicality**: Plaintiffs' claims are typical of the claims of other members of the Classes, as Plaintiffs and other members sustained damages arising out of uniform wrongful conduct of Defendants, based upon the same types of transactions that were made repeatedly to Plaintiffs and the members of the Classes.

58. **Adequate Representation**: Plaintiffs will fairly and adequately represent and protect the interests of the Classes, and have retained counsel competent and

10

experienced in class actions. Plaintiffs have no interest antagonistic to those of the Class and SubClasses, and Defendants have no defenses unique to Plaintiffs.

59.    **Predominance and Superiority**: This case is appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy. The injury suffered by the individual members of the Class and SubClasses is likely to have been relatively small compared to the burden and expense of individual prosecution of the litigation necessitated by Defendants' actions. Absent a class action, it would be difficult if not impossible for the individual members of the Class and SubClasses to obtain effective relief from Defendants. Even if members of the Class and SubClasses themselves could sustain such individual litigation, it would still not be preferable to a class action because individual litigation would increase the delay and expense to all parties and the Court due to the same legal and factual issues that would be adjudicated over and over. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

60.    **Commonality:** There are many questions of law and fact common to the claims of Plaintiffs and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not limited to the following:

a)    Whether Defendants violated 815 ILCS § 505/2, the Illinois Consumer Fraud and Deceptive Business Practices Act, by failing to clearly and

11

conspicuously disclose material purchase terms related to the Membership Programs that Defendants sell online and, thereafter, by billing consumers for those purchases without their consent.

b)      Whether Defendants violated 815 ILCS § 601/1, et. seq., the Illinois Automatic Contract Renewal Act, by failing to clearly and conspicuously disclose the automatic renewal clause related to the Membership Programs that Defendants sell online and, thereafter, by billing consumers on an automatically renewing basis without their consent.

c)      Whether Defendant Permission Interactive's conduct constitutes a breach of contract with members of the Permission Interactive SubClass.

d)      Whether Defendant Plke's Peak's conduct constitutes a breach of contract with members of the Pike's Peak SubClass.

e)      Whether Defendant Taylor Gifts' conduct constitutes a breach of contract with members of the Taylor Gifts SubClass.

f)      Whether Defendants have been unjustly enriched as a result of their wrongful activities.

g)      Whether Defendants' conduct constitutes fraud in the inducement.

h)      Whether Defendants conspired with each other to implement a scheme to fraudulently induce consumers into monthly subscriptions for Membership Programs.

12

## COUNT I

### Violations of the Consumer Fraud and Deceptive Business Practices Act
### (815 ILCS § 505/1, et seq.)
### (individually and on behalf of the Class and SubClasses)

61.    Plaintiffs incorporate by reference the foregoing allegations.

62.    The Illinois Consumer Fraud and Deceptive Business Practices Act
("ICFA") (815 ILCS § 505/1, et. seq.) protects both consumers and competitors by
promoting fair competition in commercial markets for goods and services.

63.    The ICFA prohibits any unlawful, unfair, or fraudulent business acts or
practices including the employment of any deception, fraud, false pretense, false promise,
misrepresentation, or the concealment, suppression, or omission of any material fact.

64.    As described herein, Defendants' continued utilization of unlawful and
unconscionable marketing practices, and the continuing practice of charging consumers'
credit/debit cards without authorization, constitutes a deceptive act or practice by
Defendants in violation of the ICFA.

65.    Defendants have intentionally obtained and/or intercepted, by device or
otherwise, the transmission of data by Plaintiffs and the Classes between their computers
and Defendants, including but not limited to, electronic fund transfer information stored
by a financial institution.

66.    In deceiving Plaintiffs and the Classes by creating and supporting
marketing that fails to clearly and conspicuously disclose the actual price of its
Membership Programs and, further, fails to clearly and conspicuously disclose the terms
of a subscription to those Programs, Defendants have engaged in deceptive trade
practices in violation of the ICFA.

13

67. In the cramming credit and debit card accounts of Plaintiffs and the Classes by billing Plaintiffs and the Classes without authorization, Defendants have engaged in unfair trade practices in violation of the ICFA.

68. The transactions and deception at issue in the Complaint are centered in the State of Illinois, and have the most significant relationship with Illinois, because UMG has its national headquarters here. The Merchant Partner Defendants transferred the members of the Classes' billing information to Illinois, and the unauthorized charges placed on those individuals accounts were carried out by and through UMG's Illinois offices, occurring in and emanating from Illinois. The relationship between UMG, the Merchant Partner Defendants, and Plaintiffs and members of the Classes is centered in the State of Illinois.

69. The price of a consumer product is a material term of any transaction as it is likely to affect a consumer's choice of, or conduct regarding, whether to purchase a product. Any deception related to the price of a consumer product is materially misleading.

70. Defendants' omission of the price of those Membership Programs it sells is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

71. UMG initiated electronic transfers of funds for unauthorized Membership Programs from the debit and credit card accounts of Plaintiffs and the Classes on a recurring basis, at substantially regular intervals, without first obtaining written authorization from them or providing them with a copy of any such purported authorization.

14

72. Defendants have violated the "unfair" prong of the ICFA in that they have caused substantial injury to consumers by charging their credit cards without their express consent after inducing them to submit payment information for an unrelated product and through patently deceptive marketing. The injury caused by Defendants' conduct is not outweighed by any countervailing benefits to consumers or competition, and the injury is one that consumers themselves could not reasonably have avoided.

73. Defendants' acquisition of Plaintiffs' personal billing data occurred without Plaintiffs' or members of the Classes' knowledge, consent, or authorization, and while the communications were still en route. Defendants have intentionally and knowingly disclosed such data, one to another, and have otherwise used, such data, for an unlawful purpose.

74. Plaintiffs, individually and on behalf of the Class and SubClasses, seek an order requiring Defendants to stop the challenged practices stated and awarding damages, statutory interest, and reasonable attorney's fees, expenses, and costs to the extent allowable.

## COUNT II

### Violation of the Automatic Contract Renewal Act
### (815 ILCS § 601/1, et seq.)
### (individually and on behalf of the Class and the SubClasses)

75. Plaintiffs incorporate by reference the foregoing allegations.

76. The Automatic Contract Renewal Act ("ACRA") (815 ILCS § 601/1 et seq.) requires an entity enrolling a consumer in an automatically renewing contract to provide the renewal provision to the consumer in a clear and conspicuous manner. Failure to provide that provision in a clear and conspicuous manner deems the automatic

15

renewal provision unenforceable by the party who prepared the contract or directed its preparation.

77. Defendants failed to notify Plaintiffs and the Classes in a clear and conspicuous manner of the recurring nature of the charges they assessed and that the charges would be indefinitely renewed on a monthly basis.

78. Defendants intentionally concealed and misrepresented the nature of the charges, including the actual cost and how often they would be charged.

79. Defendants engaged in cramming, irrespective of the presence or absence of clear material disclosures related to the terms and conditions of the automatically renewing offer.

80. Defendants' violation of the ACRA constitutes an unlawful practice under the Consumer Fraud and Deceptive Business Practices Act (815 ILCS § 505/1 et seq.).

81. Plaintiffs, individually and on behalf of the Class and SubClasses, seek an order requiring Defendants to immediately stop the challenged practices by preventing Defendants from enforcing any automatic renewal provisions against Plaintiffs and the Class and SubClasses, and awarding damages, statutory interest, and reasonable attorney's fees, expenses, and costs to the extent allowable.

## COUNT III

### Breach of Contract
#### (individually and on behalf of the Permission Interactive SubClass, the Pike's Peak SubClass, and the Taylor Gifts SubClass)

82. Plaintiffs incorporate by reference the foregoing allegations.

83. In order to purchase a product or service from Defendant Permission Interactive, Defendant Pike's Peak, and Defendant Taylor Gifts, Plaintiffs and members

16

of the corresponding SubClasses were required to assent to a specific amount to be billed for that product and submit their credit/debit card information to pay for the product or service.

84. Pursuant to the transactions entered into between Defendants Permission Interactive, Pike's Peak, and Taylor Gifts, on the one hand, and the respective Plaintiffs and the other members of the SubClasses, on the other hand, valid and enforceable contracts existed between members of the SubClasses and the Merchant Partner Defendants for the purchase of the Merchant Partner's products or services.

85. A material term of those contracts entered into by Plaintiffs and other members of the SubClasses with Defendants required those Merchant Partner Defendants to charge members of the SubClasses for only the specific amount that each Plaintiff and SubClass member authorized.

86. Plaintiffs and members of the SubClasses did not assent to the Merchant Partner releasing their confidential credit/debit card information to UMG, did not assent to any additional charges, and did not reasonably expect that the contract for purchase and sale would include any undisclosed charges.

87. The Merchant Partner Defendants materially breached the terms of their sales contracts by their wrongful conduct alleged herein, including transferring consumers' confidential bank card information to UMG without authorization and thereby fundamentally facilitating the placement of unauthorized charges on their credit/debit card accounts.

17

88. Plaintiffs and the members of the SubClasses have suffered damages as a direct result of the Merchant Partner Defendants' acts and practices in the form of monies paid and lost.

89. Plaintiffs, individually and on behalf of the SubClasses with respect to the corresponding Merchant Plaintiffs, seek damages for Defendants' breach of contract, as well as interest, reasonable attorney's fees, expenses, and costs to the extent allowable.

## COUNT IV

### Quantum Meruit / Unjust Enrichment (*in the alternative to breach of contract*) (individually and on behalf of the Permission Interactive SubClass, the Pike's Peak SubClass, and the Taylor Gifts SubClass)

90. Plaintiffs incorporate by reference the foregoing allegations.

91. Defendants Permission Interactive, Pike's Peak, and Taylor Gifts knowingly received a monetary benefit from Plaintiffs and the SubClasses in the form of fees, extra business, kickbacks, or other value given by UMG when the Merchant Partners wrongfully permitted UMG to obtain and/or intercept Plaintiffs' and the SubClasses' personal and private credit or debit card information, which UMG used to charge its recurring Membership Program fees.

92. Defendants Permission Interactive, Pike's Peak, and Taylor Gifts appreciate or have knowledge of such benefits.

93. Defendants Permission Interactive, Pike's Peak, and Taylor Gifts have no valid basis to accept benefits that are derived from UMG accessing and charging Plaintiffs' and members of the SubClasses' credit and debit cards for fees associated with UMG's Membership Programs.

18

94. Defendants Permission Interactive, Pike's Peak, and Taylor Gifts have received, and continue to receive, substantial benefits as a result of UMG's scheme of charging Plaintiffs' and members of the Classes' credit and debit card accounts to wrongfully earn money for itself and its Merchant Partners.

95. Such benefits constitute unjust enrichment for the Merchant Partner Defendants.

96. Plaintiffs and the SubClasses have no adequate remedy at law. Under principles of equity and good conscience, the Merchant Partner Defendants should not be permitted to retain the benefits they wrongfully received from Plaintiffs and members of the SubClasses.

97. Plaintiffs, individually and on behalf of the SubClasses with respect to the corresponding Merchant Plaintiffs, seek restitution of Defendants' unjust enrichment, as well as interest, reasonable attorney's fees, expenses, and costs to the extent allowable, and any other relief necessary to make them whole.

## COUNT V

### Quantum Meruit / Unjust Enrichment
### (individually and on behalf of the Class)

98. Plaintiffs incorporate by reference the foregoing allegations.

99. Defendant UMG received payments from Plaintiffs and the members of the Class's credit and debit card accounts without their consent and thus knowingly received a benefit from Plaintiffs and members of the Class.

100. Defendant UMG received a monetary benefit by charging Plaintiffs and the Class for unauthorized Membership Program fees and, thus, knowingly received a benefit from Plaintiffs and the Class.

19

101.    Defendant UMG appreciates and/or has knowledge of such benefit.

102.    Defendant UMG has no valid or legal basis to charge Plaintiffs and members of the Class for UMG's Membership Programs.

103.    Defendant UMG has received, and continues to receive, substantial fees through its scheme of wrongfully charging Plaintiffs' and Class members' credit and debit card accounts.

104.    Such charges constitute unjust enrichment for Defendant UMG.

105.    Plaintiffs and the Class have no adequate remedy at law. Under principles of equity and good conscience, UMG should not be permitted to retain the money belonging to Plaintiffs and members of the Class that UMG unjustly received as a result of its wrongful actions.

106.    Plaintiffs, individually and on behalf of the Class, seek restitution for UMG's unlawful conduct, as well as interest, reasonable attorney's fees, expenses, and costs to the extent allowable, and any other relief necessary to make them whole.

## COUNT VI

### Fraud in the Inducement
### (individually on behalf of the Class and the SubClasses)

107.    Plaintiffs incorporate by reference the foregoing allegations.

108.    As described with particularity herein, Defendants have fraudulently gained access and/or allowed access to the confidential credit/debit card accounts of members of the Classes and placed unauthorized charges thereon.

109.    This fraudulent conduct includes the Merchant Partner Defendants' transfer of the confidential credit/debit card numbers of members of the Classes to UMG without authorization and, acting on that unauthorized transfer, UMG's subsequent

billing of members of the Classes for Membership Programs without clearly and conspicuously disclosing the material terms of these transactions and without their authorization.

110. The Merchant Partner Defendants took concrete and intentional steps to conceal from members of the Classes that they would transfer their confidential credit card information to UMG for the express purpose of allowing UMG to place unauthorized charges on their accounts in a reoccurring manner, and that the Merchant Partners would benefit thereby.

111. UMG took concrete and intentional steps to conceal from members of the Classes that it would charge their credit cards with reoccurring negative-option Membership Programs.

112. Any amount a consumer is charged represents a material term of any transaction because it directly affects a consumer's choice of, or conduct regarding, whether to proffer payment for a product or service. Any omission related to the amount a consumer will be charged, or any omission related to whether they will be charged at all, is materially misleading.

113. Plaintiffs and the members of the Classes necessarily relied on Defendants' omissions by using their bank cards to pay for the Merchant Partners' products or services.

114. The omission of information that there will be a charge, in the case of UMG and its Merchant Partner Defendants, the failure to notify members of the Classes that they will be charged recurring monthly fees, is likely to mislead a reasonable consumer who is acting reasonably under the circumstances.

21

115. Defendants knew or should have known of the falsity and unauthorized nature of the charges they levied or facilitated against members of the Classes.

116. Defendants intended that the deceptive and fraudulent omissions made to consumers would induce them to remit payment by providing their confidential credit card information for the purchase of a product or service wholly unrelated to UMG and its Membership Programs.

117. Plaintiffs and members of the Classes were charged for Membership Programs they did not authorize. Accordingly, Plaintiffs and members of the Classes have suffered injury in fact and lost money as a result of Defendants' conduct.

118. In fraudulently charging Plaintiffs and the members of the Classes through its partnership with the Merchant Partner Defendants, UMG failed to disclose that consumers would be enrolled in a Membership Program and charged reoccurring fees without authorization. The Merchant Partner Defendants fraudulently induced Plaintiffs and the Classes to proffer payment information based on failing to inform the consumers that unauthorized charges would be applied to their bills, omitting any information about transferring their confidential bank card information to UMG, and omitting any information about UMG's subsequent recurring charges to the consumers' bank card accounts. Accordingly, the Defendants have engaged in fraudulent practices designed to mislead and deceive consumers and induce them to enter into transactions whereby they would reveal their confidential bank card information.

119. Plaintiffs and members of the Classes have suffered harm as a proximate result of this wrongful conduct of the Defendants.

120. Plaintiffs, individually and on behalf of the Classes, seek damages for Defendants' unlawful conduct and the maximum extent of other relief allowable by law.

## COUNT VI

### Conspiracy to Commit Fraud in the Inducement
### (individually and on behalf of the Class and the SubClasses)

121. Plaintiffs incorporate by reference the foregoing allegations.

122. Defendants acted in concert as business partners and through a common enterprise to churn charges for subscription Membership Programs and cram consumers' credit and debit card bills with unauthorized charges through fraudulent and deceptive tactics.

123. As a fundamental part of their business relationship, Defendants acted to deceive consumers regarding whether they would be charged for subscription Membership Programs, thereby inducing consumers to submit their confidential credit or debit card information, on which Defendants crammed unauthorized charges.

124. Defendants took overt acts in furtherance of their conspiracy across the nation, and specifically took overt acts in furtherance within Illinois and specifically in Cook County. As described with particularity above, Defendants formed contracts with each other, created deceptive marketing, advertisements, websites, and other solicitation materials to cram consumers' credit or debit card bills following what appeared to be otherwise legitimate purchases.

125. Any single Defendant, acting alone, would be unable to achieve the level of deception, misrepresentation, and unauthorized access to the credit or debit card accounts of Plaintiffs and members of the Classes accomplished by Defendants acting together. The combination of their joint conduct reinforces the appearance of legitimacy

23

presented to consumers, thereby increasing the likelihood of a consumer divulging their confidential credit or debit card numbers without knowledge or awareness of the impending unauthorized charges.

126.   Plaintiffs and the Classes have suffered harm in the form of monetary damages as a proximate result of the conspiracy and wrongful conduct jointly carried out by Defendants.

127.   Plaintiffs, individually and on behalf of the Classes, seek damages for Defendants' unlawful conduct and the maximum extent of other relief allowable by law.

## Request for Relief

WHEREFORE, Plaintiffs Carole Van Tassell, Eric Dunn, Byron Sigcho and Janet Casinover, individually and on behalf of the members of the Class and SubClasses, request that the Court grant the following relief:

a.   Certify this case as a class action on behalf of the Class and SubClasses defined above and appoint Carole Van Tassell, Eric Dunn, Byron Sigcho, and Janet Casinover as Class and Subclass representatives and undersigned counsel as class counsel;

b.   Enter judgment against United Marketing Group, LLC, Permission Interactive, Inc., Pike's Peak Direct Marketing, Inc., and Taylor Gifts, Inc.

c.   Award Plaintiffs and the Class and SubClasses all actual damages caused by Defendants' wrongful conduct;

d.   Award Plaintiffs and the Class and SubClasses civil penalties, statutory damages, increased damages, and/or punitive damages, to the maximum extent allowable under applicable law;

24

e.     Award Plaintiffs and the Class and SubClasses restitution, as appropriate,

to the maximum extent to which they are entitled, including all amounts by which

Defendants have been unjustly enriched, plus any other relief necessary to make them

whole;

f.     Award Plaintiffs and the Class and SubClasses reasonable costs, expenses,

and attorneys' fees, to the extent allowable;

g.     Award Plaintiffs and the Class and SubClasses pre- and post-judgment

interest, to the extent allowable;

h.     Enter judgment for injunctive, statutory, and/or declaratory relief as is

necessary to protect the interests of Plaintiffs and the Class and SubClasses; and

i.     Award such other and further relief as equity and justice may require.

## Jury Demand

Plaintiffs request trial by jury of all claims that can be so tried.

Dated: March 26, 2010

Christopher Dore
Will Haselden
(*pro hac vice* motion to be filed)
EDELSON MCGUIRE, LLC
350 North LaSalle, Suite 1300
Chicago, Illinois 60654
(312) 589-6370
cdore@edelson.com
whaselden@edelson.com
Firm ID #: 44146

Clifford A. Cantor
(*pro hac vice* motion to be filed)
LAW OFFICES OF CLIFFORD A. CANTOR, P.C.
627 208th Ave. SE
Sammamish, Washington 98074-7033
(425) 868-7813
cacantor@comcast.net

EDELSON MCGUIRE, LLC

By: _____

Christopher L. Dore

One of the Attorneys for Plaintiffs,
individually and on behalf of all others
similarly situated

25

# Exhibit 2

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |  |
|---|---|---|
| CAROLE VAN TASSELL; ERIC DUNN; BYRON SIGCIIO; AND JANET CASINOVER; individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | Case No.: _____ |
| Plaintiffs, | ) | |
| v. | ) | Judge _____ |
| | ) | |
| UNITED MARKETING GROUP, LLC, an Illinois limited liability company; PERMISSION INTERACTIVE, INC., a California corporation; PIKES PEAK DIRECT MARKETING, INC., a Colorado corporation, and TAYLOR GIFTS, INC., a Pennsylvania corporation, | ) ) ) ) ) ) ) ) | Magistrate Judge _____ |
| | ) | |
| Defendants. | ) | |

## DECLARATION OF JAMES F. GASTON

I, James F. Gaston, do hereby declare as follows:

1.      I am Chief Operating Officer/Chief Financial Officer at Pikes Peak Direct

Marketing Inc. ("Pikes Peak"). I make this declaration based upon my personal knowledge and

review of available documentation.

2.      Pikes Peak is a Delaware corporation with its principal place of business in

Colorado. Attached hereto as Exhibit A is a true and correct copy of a webpage from the

Secretary of the State of Colorado so indicating.

3.      Pikes Peak was served with a copy of the complaint in the above-captioned action

on April 2, 2010. Attached hereto as Exhibit B is a true and correct copy of the transmittal e-

mail Pikes Peak received from CSC Corporation, Pikes Peak's registered agent.

4.      Pikes Peak's customers reside throughout the United States.

I declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: April 30, 2010

_____
James F. Gaston

# Exhibit A

  

Home  |  Business  |  Elections  |  Licensing          Press  |  About Us  |  Contact Us

For this Record...
History & Documents
View Trade Names
Cert of Good Standing
File a Document
Subscribe Email
Notification
Unsubscribe Email
Notification

Business Home
Business Information
Business Search

FAQs, Glossary and
Information

# Summary

| | |
|---|---|
| ID Number | 20041393428 |
| Name: | Pikes Peak Direct Marketing Inc. |
| Registered Agent: | Corporation Service Company |
| Registered Agent Street Address: | 1560 Broadway Ste 2090, Denver, CO 80202. United States |
| Registered Agent Mailing Address: | |
| Principal Street Address: | 5070 Centennial Blvd, Colorado Springs, CO 80919. United States |
| Principal Mailing Address: | |
| Status: | Good Standing |
| Form: | Foreign Corporation |
| Jurisdiction: | Delaware |
| Formation Date: | 11/10/2004 |
| Term of Duration. | Perpetual |
| Annual Report Month: | November |

You may:
- View History and Documents
- View Trade Names
- Obtain Certificate of Good Standing
- File a Document
- Subscribe to E-mail Notification Regarding this Record
- Unsubscribe from E-mail Notification Regarding this Record

Previous Page

Search  |  Accessibility  |  Privacy statement  |  Terms of use          1700 Broadway, Denver CO 80290  |  303-864-7200  |  sos.business@sos.state.co.us

# Exhibit B

**From:** sop@cscinfo.com [mailto:sop@cscinfo.com]
**Sent:** Friday, April 02, 2010 1:40 PM
**To:** Terry Senger
**Subject:** Notice of Service of Process

# Corporation Service Company ®

*CSC SameDay SOP and CSC PowerBrief clients, click here to receive and view your Service of Process documents now. For more information on instant access to your SOP, click Sign Me Up.*

## NOTICE OF SERVICE OF PROCESS

Transmittal Number: 7533752
Date: 04/02/2010

Pursuant to client instructions, we are forwarding this summary and notice of Service of Process. The Service of Process document has been sent to the primary contact listed below.

| | |
|---|---|
| **Entity:** | Pikes Peak Direct Marketing Inc. |
| **Entity I.D. Number:** | 2315525 |
| **Entity Served:** | Pike's Peak Direct Marketing, Inc. |
| **Title of Action:** | Carole Van Tassell vs. United Marketing Group, LLC |
| **Document(s) type:** | Summons/Complaint |
| **Nature of Action:** | Other |
| **Court:** | Cook County Circuit Court, Illinois |
| **Case Number:** | 10CH12791 |
| **Jurisdiction Served:** | Colorado |
| **Date Served on CSC:** | 04/02/2010 |
| **Answer or Appearance Due:** | 30 Days |
| **Originally Served On:** | CSC |
| **How Served:** | Personal Service |

**Sender Information:**
Christopher L. Dore
312-589-6370

**Primary Contact:**
Terry Senger
Chef's Catalog

Information contained on this transmittal form is for record keeping, notification and forwarding the attached document(s). It does not constitute a legal opinion. The recipient is responsible for interpreting the document(s) and taking appropriate action.

Please visit www.cscglobal.com for more information on CSC's Litigation and Matter Management services, including service of process (SOP) history, online acknowledgement of SOP, fully electronic scanned SOP and SOP package tracking information.

**CSC is SAS70 Type II certified for its Litigation Management System.**

**2711 Centerville Road  Wilmington, DE 19808**
**(888) 690-2882  |**

CONFIDENTIALITY NOTICE: This e-mail message, including any attachments, is for the sole use of the intended recipient(s) and may contain confidential and proprietary information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient(s), please contact the sender by reply e-mail and destroy all copies of the original message.

# Exhibit 3

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CAROLE VAN TASSELL; ERIC DUNN; BYRON SIGCHO; AND JANET CASINOVER; individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| | ) | Case No.: _____ |
| Plaintiffs, | ) | |
| v. | ) ) | Judge _____ |
| UNITED MARKETING GROUP, LLC, an Illinois limited liability company; PERMISSION INTERACTIVE, INC., a California corporation; PIKES PEAK DIRECT MARKETING, INC., a Colorado corporation, and TAYLOR GIFTS, INC., a Pennsylvania corporation, | ) ) ) ) ) ) ) ) | Magistrate Judge _____ |
| | ) ) | |
| Defendants. | ) | |

## DECLARATION OF ALAN PORTELLI

## DECLARATION OF ALAN PORTELLI

I, ALAN PORTELLI, declare as follows:

1. I am the president and chief executive officer of United Marketing Group, LLC ("UMG"). The facts in this declaration are within my personal knowledge, and if called upon as a witness, I could testify competently to the following facts.

2. UMG has entered into marketing agreements with Pike's Peak Direct Marketing, Inc., Permission Interactive, Inc., and Taylor Gifts, Inc., the three companies that have been sued along with UMG in this case. UMG entered into its first marketing agreement with Taylor Gifts in or around July 2006. UMG entered into its first marketing agreement with Permission Interactive in or around June 2008. UMG entered into its first marketing agreement with Pike's Peak in or around May 2008.

3. Based on UMG's business records, the total membership fees (net of refunds) that UMG has generated from consumers as a result of its marketing agreements with Taylor Gifts, Permission Interactive, and Pike's Peak, exceeds $10 million from the inception of these three marketing relationships.

4. From the inception of these relationships, UMG has enrolled and billed in excess of 200,000 members as a result of these three marketing relationships.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed this 29th day of April 2010, at Schaumburg, Illinois.

Alan Portelli

## CERTIFICATE OF SERVICE

I, Livia M. Kiser, hereby certify that I caused a copy of the foregoing **NOTICE OF**

**REMOVAL OF PIKES PEAK DIRECT MARKETING INC.** to be served upon the parties

listed below, by U.S. Mail, postage prepaid, this 30th day of April, 2010:

> Christopher Dore
> Will Haselden
> Edelson McGuire, LLC
> 350 North LaSalle, Suite 1300
> Chicago, Illinois 60654
>
> Clifford A. Cantor
> Law Offices Of Clifford A. Cantor, P.C.
> 627 208th Ave., SE
> Sammamish, Washington 98074-7033

/s/ Livia M. Kiser

Livia M. Kiser
Attorney for Defendant Pikes Peak Direct
Marketing Inc.

LATHAM & WATKINS LLP
233 South Wacker Drive
Suite 5800
Chicago, Illinois 60606
Phone: (312) 876-7700
Facsimile: (312) 993-9767