**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CAROLE VAN TASSELL, ERIC DUNN, and JANET CASINOVER, individually and on behalf of all others similarly situated, | |
| *Plaintiffs*, | Case No.: 1:10-cv-02675 |
| *v.* | Honorable Ruben Castillo |
| UNITED MARKETING GROUP, LLC, an Illinois limited liability company, PERMISSION INTERACTIVE, INC., a California corporation, PIKES PEAK DIRECT MARKETING, INC., a Colorado corporation, and TAYLOR GIFTS, INC., a Pennsylvania corporation, | |
| *Defendants*. | |

**MOTION FOR AND MEMORANDUM IN SUPPORT OF
<u>PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION ...................................................................................................1

II.  FACTUAL AND PROCEDURAL BACKGROUND...........................................2

    A.   Plaintiffs' Allegations .................................................................................2

    B.   Removal from the Circuit Court and Initial Settlement Discussions...............4

    C.   Litigation in the Northern District of Illinois.................................................5

    D.   Renewed Settlement Discussions and Private Mediation .............................5

III. TERMS OF THE SETTLEMENT .......................................................................6

    A.   *Class Definition* .........................................................................................6

    B.   *Monetary Relief*.........................................................................................6

        1.   **Payment of Claims and the Claims Process** ...................................6

    C.   *Additional Relief* .......................................................................................7

        1.   **Prospective Relief**.............................................................................7

        2.   **Incentive Award for Class Representatives**...................................7

        3.   **Attorneys' Fees and Expenses** .......................................................8

    D.   *The Release by Plaintiffs and the Settlement Class* ....................................8

IV.  THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED ........8

    A.   The Numerosity Requirement is Satisfied.....................................................9

    B.   The Commonality Requirement is Satisfied ...............................................10

    C.   The Typicality Requirement is Satisfied.....................................................11

    D.   The Requirement of Adequate Representation is Satisfied ..................................12

    E.   The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3) .........13

        i.   Common Issues of Law and Fact Predominate ...............................13

        ii.   The Class Mechanism is a Superior Method of Adjudication .......14

V.      PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL .........15

VI.     THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL......16

VII.    NOTICE TO THE CLASS SHOULD BE APPROVED ....................................................19

VIII.   CONCLUSION ..........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**<u>United States Supreme Court Cases:</u>**

*Amchem Prods. Inc. v. Windsor*, 521 U.S. 591 (1997) ....................................................8-9, 12-13, 15

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).........................................................................20

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982).........................................................................10

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ...........................................................10, 13

**<u>United States Circuit Court of Appeals Cases:</u>**

*Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469 (7th Cir. 2004)................................................14

*Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305 (7th Cir. 1980)................ 16-17

*In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012 (7th Cir. 2002).........................................................14

*Isby v. Bayh*, 75 F.3d 1191 (7th Cir. 1996) ...................................................................................17

*Lemon v. Int'l Union of Operating Eng'g.*, 216 F.3d 577 (7th Cir. 2000).......................................14

*Payton v. County of Kane*, 308 F.3d 673 (7th Cir. 2002) ............................................................13

*Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672 (7th Cir. 2001).........................................................9

*Williams v. Chartwell Fin. Serv., Ltd.*, 204 F.3d 748 (7th Cir. 2000) .................................................8

**<u>United States District Court Cases:</u>**

*Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394 (N.D. Ill. 1987) ................................................13

*Harris v. City of Chicago*, Nos. 96 CV 2406, 96 CV 7526,
    1998 WL 59873 (N.D. Ill. Feb. 9, 1998) ..................................................................................11

*Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989).......................................9

*Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802 (N.D. Ill. 2008) ...............................12, 14

*Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204 (N.D. Ill. Nov. 14, 2007) ....................17

*Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278 (N.D. Ill. Mar. 31, 2004).......9

*Mc-K Sales, Inc., et al. v. Discover Fin. Serv., et al.*, 10-cv-2964 (N.D. Ill.) ...............................19 n.6

*Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336 (N.D. Ill. 2001) ......................................9

*Mullinax v. United Marketing Group, LLC, et al.*, 10-cv-3585-JEC (N.D. Ga.)...........................18 n.5

*Murray v. GMAC Mortg. Corp.*, 434 F.3d 948 (7th Cir. 2006) .......................................................14

*Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D. 424 (N.D. Ill. 2003)...............................11, 13

*Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181 (N.D. Ill. 1992) ..........................................10

*Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648 (N.D. Ill. 2006) ..........................................................9

*Whitten v. ARS Nat'l Servs. Inc.*, 00 C 6080, 2001 WL 1143238 (N.D. Ill. Sept. 27, 2001)...............10

**Statutory Provisions:**

Fed. R. Civ. P. 23.....................................................................................................................8-13, 15, 19

**Miscellaneous Authorities:**

Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS (4th ed. 2002) .................. 9-10, 16

*Manual for Complex Litigation* (Fourth) § 21.632 ................................................................................8

Plaintiffs Carole Van Tassell ("Van Tassell"), Eric Dunn ("Dunn"), and Janet Casinover ("Casinover") (collectively, the "Plaintiffs"), by and through their undersigned counsel, hereby respectfully move the Court for an order granting preliminary approval of the Parties' proposed class action settlement, certifying the proposed class for settlement purposes, approving the form and content of the proposed notice plan, appointing Plaintiffs class representatives, appointing their counsel as Class Counsel, and scheduling a final fairness hearing. In support of the instant motion, Plaintiffs state as follows:

## I.     INTRODUCTION.

This motion and the Parties' proposed class action settlement is the result of nearly a year of litigation—originating in the Circuit Court of Cook County, Illinois, and continuing, after removal, in this Court—and lengthy arms' length settlement negotiations between the Parties presided over by a well-respected mediator. The proposed settlement, if approved, will finally resolve all claims asserted against Defendants in this matter and will provide the Settlement Class with substantial monetary relief and the prospective measures necessary to ensure that Defendants' alleged conduct does not continue into the future.

Plaintiffs claims in this case arise from Defendants' alleged practice of enrolling consumers across the country in monthly subscription-based Membership Programs (defined below) without their knowledge or consent and thereafter, systematically charging and collecting so-called "membership fees" from their credit and bank accounts. The litigation has involved briefing on numerous motions, including motions to dismiss and to compel arbitration, discovery on those issues, extensive discussions regarding the potential resolution of this matter—in-person and through e-mail and telephone communications—and a private mediation presided over by the Honorable Robert

Boharic (ret.). In the end, those efforts resulted in an incredibly strong settlement for Plaintiffs and the Settlement Class.

Under the terms of the settlement, Defendant United Marketing Group, LLC ("UMG") has agreed to create a Settlement Fund providing up to $2.85 million in relief, including refunds of the membership fees collected, notice and claims administration expenses, costs and attorneys' fees. Aside from the refunds given directly by UMG, Settlement Class members may submit claims to recover up to $40 for each Membership Program in which they were enrolled and charged without authorization, or a set cash refund of $10 for each such unauthorized enrollment. Additionally, the settlement provides for prospective relief that will enhance Defendants' policies related to enrollment, enrollment notification, and cancellation procedures for the Membership Programs, so as to ensure that individuals are no longer enrolled in and charged for the Programs without their authorization. All told, the settlement provides significant relief to Plaintiffs and the Settlement Class.

Accordingly, and given the significant hurdles facing them in this litigation, including Defendants' ability and willingness to vigorously defend against the claims at issue, the Court should find that the results achieved are well within the range of possible approval and grant the instant motion in its entirety.

## II.     FACTUAL AND PROCEDURAL BACKGROUND.

### A.     Plaintiffs' Allegations.

On October 28, 2010, Plaintiffs filed their First Amended Class Action Complaint (the "Complaint"). (Dkt. No. 10; cited herein as "Compl.") In their Complaint, Plaintiffs allege that Defendants UMG, Permission Interactive, Inc. ("Permission"), Pikes Peak Direct Marketing, Inc.

("Pikes Peak"), and Taylor Gifts, Inc. ("Taylor Gifts")[1] (collectively, the "Defendants") created and participated in a scheme to systematically charge and collect unauthorized fees for UMG's subscription-based Membership Programs[2] from the credit and debit card accounts of consumers nationwide.[3] (Compl. ¶¶ 1-5.)

UMG is a direct marketing company that offers several subscription-based, negative-option Membership Programs, which purport to provide consumers with access to discounts on certain goods and services provided by a variety of companies with which UMG contracts. (*Id.* ¶¶ 16-17.) For their part, the Merchant Partner Defendants operate websites offering a variety of products and services to consumers for purchase online. (*Id.* ¶¶ 1-2.)

According to the Complaint, following the purchase of a product or service from a Merchant Partner Defendants' website, the relevant Merchant Partner transmits the consumer's credit or debit card information to UMG, which then uses that information to enroll the consumer in one of its "trial" Membership Programs, often for a fee of $1.00 or less. (*Id.* ¶ 18.) After approximately thirty days, during which the consumer is unaware that they have been enrolled in the Program, UMG proceeds to charge the consumer between $10 and $20 each month, until the unauthorized charges

---

[1]     Permission, Pike's Peak, and Taylor Gifts are collectively referred to as the "Merchant Partner Defendants."

[2]     As used in herein and the Parties' Settlement Agreement, the term "Membership Program" means UMG's (1) Buyer's Edge, (2) Dental Protector, (3) ESPN The Magazine Club, (4) Field & Stream Club, (5) Hi-Tech Auto Hotline, (6) Money Ahead Now, (7) MyAdvisor, (8) OneCall Credit Card Security Plan, (9) Perfect Home, (10) Prescription Savings Plan, (11) Prevention Healthy Rewards, (12) Simply Mine, (13) TechXperts for Consumer, and (13) Travel & Entertainment subscription membership programs.

[3]     Prior to and throughout the pendency of this litigation, proposed Class Counsel have received and diligently investigated numerous complaints from individual consumers throughout the United States regarding the unauthorized Membership Program charges at issue in this case. (*See* the Declaration of Rafey S. Balabanian ¶ 4, a true and accurate copy of which is attached hereto as Exhibit 2.) Those complaints have each involved substantially the same account: (i) a consumer makes an online purchase at one of UMG's business partners' websites; (ii) their contact and billing information is transmitted to UMG, which then enrolls them in a Membership Program; and (iii) despite never consenting to enrollment in the Program, the consumer discovers that UMG has charged and collected "membership fees" from their credit or debit card accounts, sometimes on a recurring basis. (Balabanian Decl. ¶ 5.)

are discovered. (Compl. ¶ 18.) In return for transmitting the consumer's payment information, UMG remits a portion of its revenue to the referring Merchant Partner. (*Id*. ¶ 3.)

Defendants never obtain actual authorization from consumers to be charged for the Membership Programs. (*Id*. ¶ 17.) Indeed, it is only after discovering the unauthorized charges on their credit or debit card statements—which often go unnoticed for several months—that consumers first become aware of their enrollment in these Membership Programs. (*Id*. ¶ 21.)

### B.    Removal from the Circuit Court and Initial Settlement Discussions.

Plaintiffs filed their initial complaint against Defendants in the Circuit Court of Cook County, Illinois on March 26, 2010. (Dkt. No. 1.) Soon thereafter, on April 30, 2010, the action was removed by Defendant Pikes Peak to this Court pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2). (Dkt. No. 1.) Following removal, the Court administratively dismissed the action without prejudice to the re-filing of a federal complaint and encouraged the Parties to exhaust all reasonable settlement possibilities. (Dkt. No. 9.)

In accordance with the Court's Order, Plaintiffs engaged in discussions with UMG to explore the potential for early resolution. (Balabanian Decl. ¶ 6.) As part of those discussions, proposed Class Counsel and counsel for UMG met at the Chicago offices of Edelson McGuire LLC, and agreed to begin an informal exchange of information through which Plaintiffs hoped to demonstrate the veracity of their claims and provide UMG with further detail regarding their legal theories. (*Id*. ¶ 7.) Following the Parties' meeting, on June 14, 2010, proposed Class Counsel provided UMG with a sample of the complaints they had received from consumers regarding UMG Membership Programs and further detailing Plaintiffs' theories of liability. (*Id*. ¶ 8.) Counsel for UMG responded on July 23, 2010, requesting further information, and indicating that UMG was interested in continuing the informal discovery process. (*Id*. ¶ 8.) Despite their efforts and even after engaging in further good

faith discussions, the Parties were unable to reach agreement on resolution of the case.  (Balabanian

Decl. ¶ 9.)

### C.    Litigation in the Northern District of Illinois.

Given that the Parties were unable to reach a resolution to the Action, on October 28, 2010,

Plaintiffs filed their First Amended Class Action Complaint, described above.  (Dkt. No. 10.)

Thereafter, Defendants separately and jointly, in part, moved to dismiss Plaintiffs' Complaint and/or

to stay the case pending arbitration.  (Dkt. Nos. 18-19, 21-26, 33-35, 45-49.)

Rather than immediately oppose Defendants' motions, however, Plaintiffs sought and were

granted leave to conduct limited discovery on the various issues set forth in Defendants' motions.

(Dkt. Nos. 53-54.)  Accordingly, Plaintiffs served several sets of written discovery requests upon

Defendants, including multiple interrogatories and requests for the production of documents.  With

that information in hand, Plaintiffs filed their oppositions to Defendants' several pending motions.

(Dkt. Nos. 60-69.)  On July 5, 2011, by Memorandum, Opinion and Order, the Court denied

Defendants' motions to dismiss and/or stay pending arbitration, except for Permissions' motion to

dismiss Casinover's claim for violations of the Electronic Funds Transfer Act, which was granted.

(Dkt. No. 80.)  In its Order, the Court admonished the Parties to reexamine their settlement positions

in light of its ruling.  (Dkt. No. 80.)

On July 21, 2011, UMG and Taylor Gifts answered the Complaint.  (Dkt. Nos. 90-91.)  On

July 29, 2011, Permission and Pikes Peak answered the Complaint.  (Dkt. Nos. 92-93.)

### D.    Renewed Settlement Discussions and Private Mediation.

Heeding the Court's advice, on September 12, 2012, the Parties participated in an all-day

private mediation before the Hon. Robert Boharic (ret.) of ADR Systems in Chicago, Illinois.

(Balabanian Decl. ¶ 12.)  With the assistance of Judge Boharic, the Parties were able to reach an

agreement in principle with respect to the relief due the Settlement Class. (Balabanian Decl. ¶ 13.) Only after they reached agreement on the relief due to the Settlement Class did the Parties begin negotiations regarding the amount of costs and attorneys' fees to be paid to proposed Class Counsel and incentive awards to Plaintiffs. Those negotiations took place over several weeks, and it was not until October 24, 2011, that the Parties were able to reach agreement on payment of attorneys' fees to proposed Class Counsel and an incentive award to the proposed Class Representatives. (*Id* ¶ 14.)

### III. TERMS OF THE SETTLEMENT.

The terms of the settlement follow:

**A.** *Class Definition.* The Settlement Class encompasses all individuals who were charged for a Membership Program as the result of an online transaction between March 26, 2006 and the date that the Court enters an Order preliminarily approving the settlement (the "Settlement Class"). (Settlement Agreement and Release ¶ 1, a true and accurate copy of which is attached hereto as Exhibit 1.)

**B.** *Monetary Relief.* UMG has agreed to pay up to $2.85 million for (i) claims submitted by Settlement Class members, (ii) notice and administration expenses, (iii) Class Counsel's attorneys' fees and expenses, and (iv) Plaintiffs' collective incentive award. If, after deducting these amounts, the amount available is less than the amount of valid claims submitted, the amount paid to each Class member shall be reduced proportionately. (Settlement Agreement ¶¶ 6-7.)

**1.** **Payment of Claims and the Claims Process**. To be eligible for a payment pursuant to the settlement, Settlement Class members must submit a claim that (i) is postmarked or submitted online no later than 30 days after the Fairness Hearing, (ii) contains all of the required information set forth in the claim form, (iii) satisfies the requirements of the Settlement Agreement,

and (iv) is signed or electronically verified under penalty of perjury by the Class member submitting the claim.  (Settlement Agreement ¶ 7.)

Settlement Class members may submit a claim under one of two "tiers."  A Settlement Class member that submits a valid "Tier 1" claim declaring under penalty of perjury that they did not authorize enrollment in the Membership Program(s) for which they were charged, will be entitled to receive $10 for each such Membership Program.  (*See* Tier 1 Claim Form, a true and accurate copy of which is attached to the Settlement Agreement as Exhibit 1-A.)

A Settlement Class member that submits a more detailed "Tier 2" claim, also signed under penalty of perjury, demonstrating that they did not authorize enrollment in the Membership Program(s) for which they were charged, may recover the amount of monthly membership fees, net of any refunds, up to a maximum of $40 for each such Membership Program.  (*See* Tier 2 Claim Form, a true and accurate copy of which is attached to the Settlement Agreement as Exhibit 1-B.)

### C.  *Additional Relief.*

1.  **Prospective Relief**.  Defendants have further agreed that for a period of two (2) years from the date upon which the Court enters an Order of final judgment, when enrolling consumers in a Membership Program after they have made a purchase from a third party merchant's website, Defendants shall (i) require all individuals to enter or re-enter their billing address and payment information, (ii) transmit to all enrollees a confirmation e-mail, which describes the material terms of enrollment:  the name of the Program, its price, subscription term, automatic renewal feature, date of enrollment, and cancellation procedure, and (iii) maintain a copy of any purported authorization for enrollment for a period of at least three (3) years.  (Settlement Agreement ¶ 11.)

2.  **Incentive Award for Class Representatives**.  UMG has also agreed to pay Plaintiffs, as representatives of the Settlement Class, subject to Court approval, a collective class

representative award of $7,500.00 (the "Incentive Payment"). The Incentive Payment is intended to compensate Plaintiffs for their efforts in the Action and achieving the benefits provided under the Parties' settlement. (Settlement Agreement ¶ 9.)

**3.** **Attorneys' Fees and Expenses**. Subject to Court approval, UMG has agreed to pay proposed Class Counsel $500,000.00 in attorneys' fees and for reimbursement of expenses (including court costs) associated with this case. (Settlement Agreement ¶ 8.)

**D.** ***The Release by Plaintiffs and the Settlement Class.*** In exchange for the relief described above, Defendants and each of their related and affiliated entities will receive a full release of all claims related to the improper enrollment and subsequent deduction of fees for the Membership Programs. (Settlement Agreement ¶¶ 12-13.)

## IV. THE PROPOSED SETTLEMENT CLASS SHOULD BE CERTIFIED.

Before preliminary approval of a class action settlement can be granted, the Court must determine that the proposed class is appropriate for certification. *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual for Complex Litigation* (Fourth) § 21.632. Federal Rule of Civil Procedure 23(a) provides that a class may be certified if (i) the class is so numerous that joinder of all members is impractical, (ii) there are questions of law or fact common to the class, (iii) the claims or defenses of the representative parties are typical of those of the class, and (iv) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a); *Williams v. Chartwell Fin. Serv., Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000).

Once the requirements of Rule 23(a) have been met, the proposed class must then satisfy at least one of the three subsections of Rule 23(b). *Amchem*, 521 U.S. at 614. In this case, Plaintiffs seek certification of the Settlement Class under Rule 23(b)(3), which requires that (i) the questions of law or fact common to all class members predominate over issues affecting only individual members,

and (ii) the maintenance of a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *Amchem*, 521 U.S. at 615 (1997); *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001).

As discussed further below, the proposed Settlement Class meets each of the requirements of Rules 23(a) and 23(b) and therefore, certification is appropriate.

### A. The Numerosity Requirement is Satisfied.

Rule 23(a)'s first requirement, numerosity, is satisfied where "the class is so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). There is no specific number of class members necessary to meet this requirement, nor is a plaintiff required to calculate the exact number of potential class members. *Smith v. Nike Retail Servs., Inc.*, 234 F.R.D. 648, 659 (N.D. Ill. 2006). Instead, courts are permitted "to make common-sense assumptions that support a finding of numerosity." *Maxwell v. Arrow Fin. Servs., LLC*, No. 03 C 1995, 2004 WL 719278, *2 (N.D. Ill. March 31, 2004); *see also* Alba Conte & Herbert B. Newberg, NEWBERG ON CLASS ACTIONS § 7.20, 66 (4th ed. 2002). Courts have typically found that classes encompassing forty or members are sufficiently numerous. *See, e.g., Morris v. Risk Mgmt. Alternatives, Inc.*, 203 F.R.D. 336, 342 (N.D. Ill. 2001).

The proposed Settlement Class in this case easily satisfies Rule 23's numerosity requirement. Indeed, according to UMG's own records, there are more than 200,000 individuals that have been enrolled in and charged for its Membership Programs at issue in this case. (*See* Declaration of Alan Portelli ¶¶ 3-4, Dkt. No. 1-1); *see also Heastie v. Cmty. Bank of Greater Peoria*, 125 F.R.D. 669 (N.D. Ill. 1989) (classes numbering in the thousands "clearly" satisfy the numerosity requirement). Thus, there should be little question that joinder of all members of the proposed Class would be impractical and Rule 23(a)'s numerosity requirement is satisfied. *See* NEWBERG ON CLASS ACTIONS §

3:5, 243-46 (4th ed. 2002) ("Class actions under…Rule 23 have frequently involved classes numbering in the…thousands... In such cases, the impracticability of bringing all class members before the court has been obvious, and the Rule 23(a)(1) requirement has been easily met.").

### B. The Commonality Requirement is Satisfied.

Rule 23(a) next requires that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality requires the representative plaintiff to demonstrate that the proposed class members "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011) (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Stated differently, commonality requires that the claims of the class "depend upon a common contention…of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id.* Nevertheless, the threshold for commonality is not high. *Scholes v. Stone, McGure, & Benjamin*, 143 F.R.D. 181, 185 (N.D. Ill. 1992). Instead, commonality is present where a common nucleus of operative fact exists, even if as to one question of law or fact. *Whitten v. ARS Nat'l Servs. Inc.*, No. 00 C 6080, 2001 WL 1143238, *3 (N.D. Ill. Sept. 27, 2001) (commonality is often found where "defendants have engaged in standardized conduct toward the members of the proposed class.").

In this case, the members of the Settlement Class share several common questions of fact, including: (i) whether UMG obtained the Class members' contact and billing information from the Merchant Partner Defendants; and (ii) whether UMG obtained authorization to charge and collect fees for its Membership Programs from Settlement Class members. Those common factual questions, lead to several legal questions common to all Settlement Class members, including: (i) whether Defendants have been unjustly enriched as a result of their wrongful activities; (ii) whether

10

the Merchant Partner Defendants, on the one hand, and UMG on the other, conspired to enroll

Settlement Class members in UMG's Membership Programs without their knowledge or consent;

(iii) whether the Merchant Partner Defendants' alleged conduct constitutes a breach of their purchase

agreements with Settlement Class members; (iv) whether the Merchant Partner Defendants' conduct

constitutes fraud in the inducement; and (v) whether Defendants' conduct violates either the Illinois

Consumer Fraud and Deceptive Business Practices Act, 815 ILCS §§ 505/1, *et seq.*, the Electronic

Funds Transfer Act, 15 U.S.C. § 1693e, or the Electronic Communications Privacy Act, 18 U.S.C. §§

2510, *et seq*.

Thus, there are multiple questions of law and fact common to all Settlement Class members

and the commonality requirement is satisfied as well.

### C.     The Typicality Requirement is Satisfied.

The third requisite to certification under Rule 23(a) asks whether the Plaintiffs' claims are

typical of those of the proposed Settlement Class.  Fed. R. Civ. P. 23(a)(3).  The typicality

requirement is closely related to commonality and is similarly satisfied if Plaintiffs' claims arise from

"the same event or practice or course of conduct that gives rise to the claims of other class members

and…are based on the same legal theory."  *Radmanovich v. Combined Ins. Co. of Am.*, 216 F.R.D.

424, 432 (N.D. Ill. 2003) (internal quotations omitted).  However, factual differences alone will not

preclude a finding of typicality—the claims of a named plaintiff need only share "the same essential

characteristics" as those of the class.  *Id.*  Indeed, "'[s]imilarity of legal theory is more important than

factual similarity….'" *Id.* (quoting *Harris v. City of Chicago*, Nos. 96 CV 2406, 96 CV 7526, 1998

WL 59873, at *5 (N.D. Ill. Feb. 9, 1998)).

As alleged in the Complaint, Plaintiffs and the proposed Settlement Class share the exact

same legal theories and their claims have the same essential characteristics.  That is, each had their

11

debit or credit card account information transferred to UMG by a Merchant Partner Defendant, each

was then enrolled in and charged for one or more of UMG's Membership Programs without their

knowledge or consent, and each then suffered the same injury—damages in the form of the monies

Defendants allegedly collected from them without authorization. Thus, by pursuing their own

claims, Plaintiffs will necessarily advance the interests of the proposed Settlement Class and their

claims are sufficiently typical of those of the other Settlement Class members.

Rule 23(a)(3)'s typicality prerequisite is met.

**D.**      **The Requirement of Adequate Representation is Satisfied.**

Finally, Rule 23(a) requires that the representative parties have and will continue to "fairly

and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4); *Amchem*, 521 U.S. at 625

(the adequacy requirement is meant "to uncover conflicts of interest between named parties and the

class they seek to represent."). To satisfy the adequacy requirement, class representatives must

establish that (i) their claims are not in conflict with those of the proposed class, (ii) they have

sufficient interests in the outcome of the case, and (iii) they are represented by experienced,

competent counsel. *Hinman v. M and M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 807 (N.D. Ill. 2008).

Here, Plaintiffs have the same interests as the proposed Settlement Class—they all have been

charged for UMG's Membership Programs without their knowledge or consent. As a result, they all

have the same interest in recovering the monies collected from them and ensuring that Defendants'

conduct does not continue in the future. Plaintiffs have no interests antagonistic to those of the

proposed Settlement Class and their pursuit of this action demonstrates as much. Indeed, Plaintiffs

have and will continue to advocate vigorously on behalf of the Settlement Class.

Similarly, Plaintiffs' counsel are well-respected members of the legal community, who have

extensive experience in class actions of similar size, scope, and complexity to the instant action.

12

They have regularly engaged in major complex litigation involving the Internet and consumer technology issues, have the resources necessary to conduct litigation of this nature, and have frequently been appointed lead class counsel by courts throughout the country. (*See* Firm Resume of Edelson McGuire LLC, a true and accurate copy of which is attached to the Balabanian Declaration as Exhibit 2-A); *see also Gomez v. Ill. State Bd. of Educ.*, 117 F.R.D. 394, 401 (N.D. Ill. 1987) (the fact that proposed class counsel have been found to be adequate in other cases is persuasive). Proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the claims in this action, and will continue to do so throughout its pendency.

Accordingly, both Plaintiffs and their counsel have and will continue to adequately represent the Settlement Class.

### E.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3).

Upon satisfying Rule 23(a)'s prerequisites, a plaintiff must also demonstrate that the proposed class satisfies one of the three subsections of Rule 23(b). *Payton v. County of Kane*, 308 F.3d 673, 680 (7th Cir. 2002). Here, Plaintiffs seek to certify the proposed Settlement Class under Rule 23(b)(3), which provides that a class action may be maintained where the questions of law and fact common to the class predominate over any questions affecting only individual members, and the class action mechanism is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3). The Settlement Class meets both of these requirements.

### i.     Common Issues of Law and Fact Predominate.

First, the inquiry into whether common questions predominate is generally focused on whether there are common liability issues that may be resolved efficiently on a class basis. *Amchem*, 521 U.S. at 623; *Dukes*, 131 S. Ct. at 2551-57. Although common issues must predominate, they need not be exclusive. *Radamanovich*, 216 F.R.D. at 435. Instead, common issues predominate if

they have a direct impact on each class member's ability to establish liability and prevail on the claims asserted. *Lemon v. Int'l Union of Operating Eng'g.*, 216 F.3d 577, 581 (7th Cir. 2000).

In order to prevail on their claims, Plaintiffs and each member of the Settlement Class will be required to establish that (i) the Merchant Partner Defendants failed to obtain authorization to transmit their contact and billing information to UMG, (ii) UMG failed to obtain their authorization to enroll them in its Membership Programs, and (iii) UMG was unauthorized to charge and collect Membership Program fees from them.  Likewise, Plaintiffs and the proposed Class members allege that the manner in which their information was transmitted to UMG, and were enrolled in and ultimately charged for the Membership Programs, are virtually identical.  Thus, their claims will be subject to common proofs applicable to the Class as a whole, and the common questions resulting from Defendants' alleged misconduct predominate over any issues affecting only individual Class members, such as the amount of damages each Class member is entitled to recover.  *See, e.g., Allen v. Int'l Truck & Engine Corp.*, 358 F.3d 469, 472 (7th Cir. 2004) (issues such as the amount of individual damages to be awarded will not, generally, militate against class certification).

ii.      The Class Mechanism is a Superior Method of Adjudication.

Finally, the instant class action is superior to any other available method for the fair and efficient adjudication of the claims in this case.  The superiority requirement focuses on whether class treatment will increase efficiency in the litigation and is satisfied where class members have uniform claims governed by the same law.  *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002); *Hinman,* 545 F. Supp. 2d at 807 (courts must consider whether class treatment represents an "efficient use of both judicial and party resources"); *see also Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 953 (7th Cir. 2006) (in cases where "the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate…society may gain from the

14

deterrent effect of financial awards" on a class basis.).

Absent class treatment in this case, each Settlement Class member would be required to present the same or essentially the same legal and factual arguments, in separate and duplicative proceedings, the result of which would be a multiplicity of trials conducted at enormous expense to both the judiciary and the litigants. Inefficiency aside, there is no indication that members of the Class have a strong interest in individual litigation, let alone any incentive to pursue their claims individually, given the small amount of damages likely to be recovered relative to the resources required to prosecute such an action. Moreover, certification will also promote consistency of rulings and judgments, giving all parties the benefit of finality. And, finally, because this action has now been settled—pending approval of the Court—the Court need not be concerned with issues of manageability relating to trial. *See Amchem*, 521 U.S. at 620 ("[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case…would present intractable management problems…."). Thus, the superiority requisite is also met.

Having satisfied each of the requirements for class certification under Rules 23(a) and 23(b)(3), this Court should certify the proposed Settlement Class, for settlement purposes.

## V.     PLAINTIFFS' COUNSEL SHOULD BE APPOINTED AS CLASS COUNSEL.

When the Court grants class certification under Rule 23, it must also appoint class counsel who will fairly and adequately represent the interests of the class. In making this determination, the Court must consider proposed class counsel's (i) work in identifying or investigating potential claims, (ii) their experience in handling class actions and the types of claims asserted in the case at hand, (iii) their knowledge of the applicable law, and (iv) the resources they have committed to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

15

As discussed above, proposed Class Counsel have diligently investigated, prosecuted, and dedicated substantial resources to the investigation of the claims at issue in this case, and will continue to do so throughout its pendency. (Balabanian Decl. ¶¶ 4-5, 20.) Considering the parties' extensive informational exchanges, several months of negotiations, and the breadth of motion practice, proposed Class Counsel have a superior knowledge of both the factual and legal elements of the claims alleged in this case. And, it was this knowledge that proposed Class Counsel was able to successfully negotiate the settlement now before the Court. Moreover, and as discussed above, proposed Class Counsel are well-respected members of the legal community, have significant experience litigating similar class actions, and have frequently been appointed lead class counsel by courts throughout the country. (*Id.* ¶¶ 20-22, Ex. 2-A.)

For these reasons, the Court should appoint Plaintiffs' counsel to serve as Class Counsel.

## VI. THE PROPOSED SETTLEMENT WARRANTS PRELIMINARY APPROVAL.

In addition to certifying the Settlement Class, the Court must determine whether the proposed settlement warrants preliminary approval. When deciding whether to grant preliminary approval, courts rely on a well-established two-step process. NEWBERG ON CLASS ACTIONS §11.25, at 38-39 (4th ed. 2002); *see also Armstrong v. Board of Sch. Dirs. of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980). First, a preliminary, pre-notification hearing is held to determine whether the proposed settlement is "within the range of possible approval." NEWBERG ON CLASS ACTIONS §11.25, at 38-39. The preliminary approval hearing is not a fairness hearing, but rather, a hearing "to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Armstrong*, 616 F.2d at 314. If the Court finds the proposed settlement to be "within the range of possible approval," then the case proceeds to the second step in the review process—the final fairness hearing. *Id.*; NEWBERG ON CLASS ACTIONS §11.25, at 38-39.

16

Both judicial and public policies strongly favor the settlement of class action litigation. *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996). Although the standards to be applied at the preliminary approval stage "are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l*, 05 C 5944, 2007 WL 4105204, at \*5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314). The factors to be considered at this stage are (i) the strength of the plaintiff's case compared to the amount of the settlement; (ii) an assessment of the likely complexity of trial; (iii) the length and expense of the litigation; (iv) the amount of opposition to settlement among affected parties; (v) the opinion of counsel; and (vi) the stage of the proceedings and amount of discovery completed. *Id.* (citing *Isby*, 75 F.3d at 1199).

Applying this six-factor test to the instant settlement clearly demonstrates that it is fair, reasonable, and adequate, and that it falls well within the range of possible approval. First, Plaintiffs believe that their claims against Defendants are strong, well supported by applicable law, and if pursued, would result in a judgment in favor of the Settlement Class. Notwithstanding, they recognize the certainty of recovery—both monetarily and in terms of prospective relief—that the proposed settlement represents. Specifically, with only a minimal showing (i.e., a sworn explanation of the unauthorized charges), each Class member will be entitled to receive up to $40 for each claimed unauthorized enrollment, or a set cash refund of $10 for each such enrollment by simply submitting a claim form.[4] Moreover, Defendants have agreed to enhance their enrollment, enrollment notification, and cancellation procedures to ensure that Class members are not subjected to similar unauthorized charges in the future. (Settlement Agreement ¶ 11.)

---

[4] Should the total amount of claims, notice and administration expenses, attorneys' fees and incentive awards exceed $2.85 million, Settlement Class members will receive their pro rata share of the settlement fund. (Settlement Agreement ¶ 7.)

Based upon their own analysis and the information obtained from Defendants through informal discovery, the $2.85 million monetary component of the settlement represents a significant recovery for the Settlement Class—compensating Settlement Class members for a majority of the unauthorized Membership Program charges they incurred. (Balabanian Decl. ¶ 16.) Given the robust notice plan (i.e., direct notice via e-mail or U.S. Mail, and the creation of a settlement website), coupled with the ease with which Class members may file claims for reimbursement of allegedly unauthorized charges, proposed Settlement Class Counsel believes that the recovery for the Settlement Class is well within the range of possible approval. (*Id.*)

Plaintiffs also recognize that despite their belief in the strength of their claims, the expense, duration, and complexity of protracted litigation would be substantial, and require further briefing on numerous substantive issues, evidentiary hearings, and further discovery and the gathering of evidence and witnesses from across the country. The fact that the instant settlement was reached only after nearly a year of motion practice, an extensive exchange of information through both formal and informal discovery, and several months of arms'-length negotiations and settlement discussions, serves to reinforce that concern. In addition, in light of the complexity of the issues and the amount in controversy, the defeated party would likely appeal, further delaying any recovery by the Class. Given the strength of the settlement, Plaintiffs anticipate an overwhelmingly favorable reaction, with no significant opposition by Settlement Class members.[5]

---

[5]     While Plaintiffs anticipate no significant opposition to the settlement, the attorneys for the plaintiff in a "copy cat" lawsuit pending in the U.S. District Court for the Northern District of Georgia, captioned *Mullinax v. United Marketing Group, LLC, et al.*, Case no. 10-cv-3585-JEC (the "*Mullinax* matter"), may try to take issue with the settlement. For purposes of background, the *Mullinax* matter was filed some six months after the litigation in this case began. (*Mullinax* matter, Dkt. No. 1.) The lawsuit was a near carbon-copy of Plaintiffs' Complaint here, against Defendants UMG and Permission, borrowing not only the Complaint's general structure, but also its substantive content, and nearly verbatim. (*Id.*) Unlike this litigation, however, the *Mullinax* matter stalled almost immediately after it was filed. After removal of the case to federal court, on December 3, 2010, the defendants moved to dismiss, which Mullinax neglected to oppose. (*Id.*, Dkt. Nos. 1, 8-9.) Consequently, the district court dismissed the case. (*Id.*, Dkt. No. 13.) Mullinax later sought relief from

For all of these reasons, Plaintiffs' and proposed Class Counsel firmly believe that the monetary and prospective relief provided by the settlement weighs heavily in favor of its approval. (Balabanian Decl. ¶¶ 15-19.) Accordingly, the Court can appropriately find that the proposed settlement represents a fair, reasonable and adequate result and that it warrants preliminary approval.[6]

## VII.   NOTICE TO THE CLASS SHOULD BE APPROVED.

Finally, Rule 23(b)(3) requires that in cases such as this, where the relief sought includes monetary damages and class certification is requested, notice must be disseminated to the proposed class. The substance of the notice must describe in plain language the nature of the action, the definition of the certified class, and the class claims and defenses at issue. *See* Fed. R. Civ. P. 23(c)(2)(B). The notice must also explain that class members may enter an appearance through counsel if desired, may request to be excluded from the class, and that a class judgment shall have a binding effect on all class members. *Id.* Additionally, dissemination of the notice must comport with

---

the court's order of dismissal, contending that his counsel was unaware of the need to file an appearance in federal court in order to oppose the motion. (*Id.*, Dkt. No. 14.) The court ultimately granted the requested relief finding counsel's neglect excusable. (*Id.*, Dkt. Nos. 47, 50.) Although Mullinax has since filed a first amended complaint, both UMG and Permission have sought stay the *Mullinax* matter pending approval of the settlement in this case, or, in the alternative, to transfer the case to this Court. Mullinax has opposed their motions. (*Id.*, Dkt. Nos. 50-55.)

[6]      Notably, Judge Robert W. Gettleman, of the U.S. District Court for the Northern District of Illinois, granted both preliminary and final approval to a similar class action settlement in the case captioned *Mc-K Sales, Inc., et al. v. Discover Fin. Serv., et al.*, Case no. 10-cv-2964 (the "*Mc-K Sales* matter"). In the *Mc-K Sales* matter, the plaintiffs (represented by Plaintiffs' counsel in this case, Edelson McGuire LLC) asserted causes of action against defendants Discover Financial Services, UMG, and a second third-party marketing company known as Saturday Holdings, Inc., for the alleged unauthorized enrollment of small businesses in subscription-based membership programs. Similar to the instant action, the parties to the *Mc-K Sales* matter reached a class action settlement after months of in-person meetings, communications and, eventually, a private mediation with a former federal magistrate judge. (*Mc-K Sales* matter, Dkt. Nos. 79-80.) Based on the success of the settlement reached in the *Mc-K Sales* matter, the Parties modeled the instant settlement after the one reached in that case. Like the proposed settlement here, the *Mc-K Sales* settlement provided both monetary and prospective relief to settlement class members. That is, the settlement entitled class members to make claims by mail and online under one of two tiers, which provided for a set cash refund or a higher payment with the submission of additional information, and provided for prospective measures to protect the settlement class from future unauthorized billings. (*Id.*, Dkt. Nos. 79-80, 96.) In granting preliminary and final approval of the settlement, Judge Gettleman found that the settlement provided substantial relief, and was "fair, reasonable, adequate and in the best interests of the [Class]." (*Id.*, Dkt. Nos. 96, 115.)

both Rule 23 and due process, which require that a class receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). The proposed notice plan in this case satisfies Rule 23's notice requirements, as well as due process considerations.

The Parties' settlement contemplates a three-part notice plan. First, the settlement administrator will direct notice of the settlement via e-mail to the last known e-mail address of each Settlement Class member. Second, for those Settlement Class members for whom UMG does not possess an e-mail address, the settlement administrator will direct notice of the settlement via post card to their last known physical address. Third, the settlement administrator will establish a website serving as the "long-form" notice, which will provide uninterrupted access by the public to relevant Court documents, downloadable claim forms, and provide for the online submission of claims. (True and accurate copies of the proposed notices and claim forms are attached to the Settlement Agreement as Exhibits 1-A through 1-D.) The Parties' expect the notice plan will be particularly effective here. That is, the members of the Settlement Class are likely to be frequent Internet and e-mail users, as evidenced by their use of the Merchant Partner Defendants' websites and their submission of e-mail addresses to make and track purchases from those sites.

The notices are neutral in tone and ultimately, provide Settlement Class members with a detailed explanation of their options, which will allow them to make an informed decision as to their participation in the settlement. As such, the proposed notice plan comports with Rule 23 and the requirements of due process and should be approved by the Court.

## VIII.   CONCLUSION.

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an Order: (i) certifying the Settlement Class as defined in the Parties' Settlement Agreement and Release; (ii)

appointing Carole Van Tassell, Eric Dunn, and Janet Casinover, as Settlement Class representatives;

(iii) appointing the undersigned as Class Counsel; (iv) preliminarily approving the Parties' Settlement

Agreement; (v) approving the form and methods of the proposed notice; and (vi) granting such other

and further relief as the Court deems reasonable and just.[7]

Respectfully Submitted,

Dated:  November 21, 2011          **CAROLE VAN TASSELL, ERIC DUNN, and JANET CASINOVER**, individually and on behalf of all others similarly situated,

By:  /s/ Rafey S. Balabanian
            One of Plaintiffs' Attorneys

Jay Edelson
Rafey S. Balabanian
Benjamin H. Richman
Christopher L. Dore
EDELSON MCGUIRE LLC
350 North LaSalle Street, Suite 1300
Chicago, Illinois 60654
Telephone:  (312) 589-6370
Facsimile:  (312) 589-6378
*jedelson@edelson.com*
*rbalabanian@edelson.com*
*brichman@edelson.com*
*cdore@edelson.com*

---

[7]        A proposed preliminary schedule of deadlines leading to final approval is contained in the [Proposed] Preliminary Approval Order attached to the Settlement Agreement as Exhibit 1-E.